**SECOND DIVISION**
**DOYLE, P. J.,**
**DAVIS, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely**
**filed.**
            **https://www.gaappeals.gov/rules**

**July 1, 2026**

# In the Court of Appeals of Georgia

A26A0753. WUNDERBAR INNOVATIONS NETWORK, INC. et
    al. v. KINNEY et al.

DOYLE, Presiding Judge.

After James Kinney, Paul Kinney, and Perry John (collectively, the "Appellees" or "Judgment Creditors") successfully obtained a judgment against Defense Products and Services Group, Inc., and Defense Products and Services Group Holding Company, Inc. (collectively, the "DPSG Companies" or "Judgment Debtors"),[1] two Georgia companies whose CEO is Charles Fincher, the Appellees began the post-judgment discovery process. What should have been simple post-judgment discovery on the DPSG Companies and other non-parties has turned into

---

[1] See *Def. Prods. and Servs. Group, Inc. v. Kinney*, 368 Ga. App. 617 (889 SE2d 381) (2023).

a quagmire as a result of the Appellees' unilateral change of the DPSG Companies' names in the style of the case to include two Virginia companies[2] formed by Fincher in his failed "attempt to [move] the GA companies['] home" to Virginia. . The same day the judgment was affirmed on appeal, Fincher's accountant incorporated two companies in Virginia with names identical to the DPSG Companies, but Fincher later renamed them the Wunderbar Innovations Network, Inc., and Wunderbar Innovations Network Holding Company, Inc. (collectively, the "Appellants" or the "Wunderbar Companies"). The Appellees discovered these newly incorporated Virginia entities and assumed that "Fincher had apparently moved the DPSG entities back to Virginia and renamed them[.] ... Hence, [they included in] the caption for the new case number[3] ... the new names of the entities." This unauthorized change in the name of the Judgment Debtors in the case style has resulted in unnecessary confusion for all parties, the trial court, and this Court. For the reasons that follow, we reverse the trial court's final order with respect to the Wunderbar Companies, and we affirm

---

[2] This Court has found no trial court order allowing a change in the style of the case or the addition or substitution of the Virginia companies as parties in any of the post-judgment cases.

[3] Pursuant to OCGA § 15-6-77(e)(1), any post-judgment proceeding filed more than 30 days after judgment is considered a new case and is given a new case number by the superior court clerk. This has resulted in multiple post-judgment case numbers and new civil actions, which has impeded our review of the case on appeal.

2

the final order with respect to the DPSG Companies and Fincher in his capacity as DPSG Companies corporate representative.[4]

"In matters involving discovery disputes, trial judges have broad discretion in controlling discovery, including the imposition of sanctions, and this Court will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion." *Mincey v. Ga. Dep't of Cmty. Affairs*, 308 Ga. App. 740, 747(2) (708 SE2d 644) (2011) (punctuation and quotation marks omitted). A de novo standard of review applies to a trial court's ruling on a motion to dismiss, see *Walker County v. Tri-State Crematory*, 292 Ga. App. 411, 411 (664 SE2d 788) (2008), and to the extent that this appeal presents legal issues, see *Vaughn v. Vaughn*, 365 Ga. App. 195, 198(1) (877 SE2d 860) (2022).

So viewed, the record reflects that the Appellees prevailed in arbitration against the DPSG Companies. The arbitrator found that the Appellees collectively owned a 20 percent stake in the DPSG Companies and awarded them $371,186.84 in attorney fees and expenses. The trial court confirmed the award and entered a judgment

---

[4] The Appellees properly served discovery on, and noticed the deposition of a corporate representative of, the DPSG Companies. The trial court's final order applies to the DPSG Companies and Fincher in his capacity as their corporate representative. Because the DPSG Companies have not appealed this portion of the trial court's final order, it is affirmed as to the DPSG Companies and Fincher as the representative thereof.

thereon. The DPSG Companies appealed the order confirming the award, which this Court affirmed on June 15, 2023. See *Kinney*, 368 Ga. App. at 617.

Also on June 15, 2023, Fincher incorporated the two Virginia companies, which he later renamed the Wunderbar Companies. The Virginia Secretary of State records list Fincher as the president of the Wunderbar Companies, both before and after their names changed.

According to a letter in the record,[5] on March 13, 2024, the Appellees served the DPSG Companies with post-judgment written discovery, to which they failed to respond. Having learned of the existence of the Wunderbar Companies, and apparently assuming that these companies had subsumed the DPSG Companies, on May 28, 2024, the Appellees filed a motion to compel the March 13, 2024 discovery with the style now referring to the Judgment Debtors as the Wunderbar Companies f/k/a the DPSG Companies.[6] Counsel for the Appellees — and, by "special

---

[5] The record in this case consists of at least two lower court case numbers. The first, Fulton County Superior Court Civil Action Case Number 24CV014071, begins on November 5, 2024, and ends on June 30, 2025. The second, 24CV005409, begins on April 22, 2025, and ends on October 30, 2025. While some filings from before November 5, 2024, are contained in the record as attachments to other pleadings, others are not but are presumed to have occurred as represented by the attorneys in their various correspondence summarizing the post-judgment proceedings.

[6] This was the first instance in which the Appellees used the "f/k/a" nomenclature in the case caption, which was adopted in subsequent filings and

4

appearance," Counsel for the "Respondents/Judgment Debtors" — appeared at a September 5, 2024 hearing on the motion to compel the written discovery served on the DPSG Companies.[7] The "Respondents/Judgment Debtors" objected to personal jurisdiction and venue, which objections the trial court overruled in an order dated September 10, 2024; the trial court also granted the Appellees' motion to compel the "Respondents/Judgment Debtors" to provide fulsome discovery responses and pay sanctions. In the style of the order, the "Respondents/Judgment Debtors" were identified as the Wunderbar Companies f/k/a the DPSG Companies, which entities the Appellees represented were the Georgia companies against whom they had obtained a judgment.[8] . The order makes no mention of the Wunderbar Companies individually or whether the trial court had personal jurisdiction over them. No appeal was taken from that order.

proceedings. At times, the style referred to the Wunderbar Companies as "Defendants" and in some instances identified only to the Wunderbar Companies as "Respondents" without reference to the DPSG Companies.

[7] There is no transcript of the September 5, 2024 hearing in the record, so this information is taken from the trial court's subsequent order. The order does not indicate who appeared at this hearing as counsel for the "Respondents/Judgment Debtors."

[8] At this point, the only post-judgment discovery served was the written discovery requests to the DPSG Companies.

On October 14, 2024, the Appellees, "via statutory electronic service" to counsel,[9] served notices of depositions under OCGA § 9-11-30(b)(6) ("Rule 30(b)(6)") on the Wunderbar Companies (not the DPSG Companies), identifying topics and requesting document production related to Fincher's formation and financing of companies since 2010. The Wunderbar Companies objected to every identified topic and document request and refused to designate a corporate representative to be deposed. On October 29, 2024, the Appellees sent counsel for the Wunderbar Companies correspondence pursuant to Uniform Superior Court Rule 6.4(B) ("USCR 6.4(B)") outlining the deficiencies in their responses; the Wunderbar Companies did not respond. On November 5, 2024,[10] the Appellees moved to compel the Rule 30(b)(6) depositions of a corporate representative for the Wunderbar Companies, which motion the Appellees claim was served on counsel for the Wunderbar Companies via statutory electronic service.

Apparently because the clerk had initiated a new case pursuant to OCGA § 15-6-77(e)(1) and because the trial court was concerned about potential service issues, on

---

[9] Multiple attorneys and law firms have represented the DPSG Companies and the Wunderbar Companies. At the time the deposition notices were sent, Caplan Cobb, LLC appear to be the attorneys of record.

[10] This is the point at which the appellate record officially begins.

November 12, 2024, the trial court ordered the Appellees to serve the motion to compel Rule 30(b)(6) depositions on the "opposing parties" under OCGA § 9-11-4, and it directed the Appellees to file proof of such service pursuant to OCGA § 9-11-4(h).[11] The Appellees requested that counsel for the Wunderbar Companies accept service but were informed that counsel (Caplan Cobb) no longer represented the Wunderbar Companies as of November 19, 2024. On November 22, 2024, the Appellees personally served the DPSG Companies through a private process server with the motion.[12]

In its proof of service filing, the Appellees noted that "[t]o evade the judgment, create confusion, and cause Petitioners additional expense, Ken Fincher, majority stockholder in the Respondent companies, has created a number of similarly-owned companies in Virginia. The judgment is against the two named entities in the caption, *which are Georgia entities*. The Motion to Compel was served on the same entities."

---

[11] In this iteration, the style of the trial court's order reads: "James Kinney, et al., *Plaintiffs*, v. Wunderbar Innovations Network, Inc., et al. *Defendants.*" (Emphasis added.)

[12] The process server averred that "[o]n November 22, 2024, …, I served the Respondent/Judgment Debtor, Defense Products and Services Group, Inc., by serving their Registered Agent, My Company Works, Inc., located at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia, 30076." He averred the same as to Defense Products and Services Group Holding Company.

(Emphasis added.) There is no evidence in the record that the motion to compel was served on the Wunderbar Companies, either via statutory electronic service or through their registered agent in Virginia.

Nevertheless, on February 28, 2025, the trial court, in an order styled "James Kinney, et al., Petitioners, v. Wunderbar Innovations Network, Inc., et al., Respondents," granted the motion to compel, ordering the "Respondents" to designate a corporate representative to be deposed within 15 days. On March 14, 2025, Fincher sent the Appellees correspondence in which "as the president of the corporations, [he designated himself] as the corporate witness."[13] Fincher did not offer deposition dates, so on March 17, 2025, the Appellees noticed depositions directed to the Wunderbar Companies and served them "via email and statutory overnight delivery" on Fincher at a Virginia address; they also sent deposition notices to the DPSG Companies. Fincher responded that he could not attend the depositions

_____

[13] The letter does not specify what corporations Fincher referred to. Fincher also sent the Appellees correspondence in which he stated that his intention in incorporating Defense Products and Services Group, Inc., and Defense Products and Services Group Holding Company, Inc., in Virginia was to "'recover the GA entities and bring them to VA where they started." He further stated, "We were unable to relocate or reconstitute the GA companies[,] and I thought that must be because of the names so they were renamed with the new names Wunderbar Innovations Network and WIN HC which have the Fka DPSG Inc and HC Inc. names. No new activity of any sort or bank accounts were created for these companies[;] they were simply a failed attempt to bring the GA companies home."

because he had jury duty. Thereafter, the Appellees requested alternate dates, which Fincher failed to provide.

On March 21, 2025, the Appellees filed a motion for contempt and sanctions against the "Respondents/Judgment Debtors," referred to in the case style as the Wunderbar Companies f/k/a the DPSG Companies. Again, by special appearance, the Wunderbar Companies filed a response in opposition, in which they moved for dismissal under OCGA § 9-11-12 based on, among other things, insufficient service. Attached to the response was an affidavit of Fincher in which he averred that the Wunderbar Companies were unrelated to the DPSG Companies.

After a hearing, the trial court denied the motion to dismiss and granted the Appellees' motion for contempt and sanctions. The trial court noted that the motion to dismiss was not filed on behalf of the DPSG Companies, and the DPSG Companies filed no response to the motion for contempt. Rather, the motion to dismiss was filed by the Wunderbar Companies, which contended that the DPSG Companies are separate entities. The Court also did "not make a fact-finding as to whether these [four] entities are separate or the same." Nevertheless, the trial court denied the motion to dismiss as to the Wunderbar Companies because they had previously unsuccessfully litigated the issues of personal jurisdiction and venue and had waived

their service-related objections by failing to raise them at the September 5, 2024 hearing on the first motion to compel. The trial court further found that Fincher and the Wunderbar Companies were in willful contempt of the February 28, 2025 order granting the motion to compel based on Fincher's designation of himself as the corporate representative of all four companies[14] and his failure to be deposed. The trial court assessed a $500 penalty against Fincher and the Wunderbar Companies, ordered the Wunderbar Companies to respond to outstanding discovery requests, and ordered Fincher to provide his availability for a virtual deposition.

The Wunderbar Companies now appeal, enumerating four errors: the trial court erred by (1) permitting the Appellees to substitute non-judgment debtors into the proceedings by adding them to the caption in direct contradiction of *C-Staff, Inc. v. Liberty Mut. Ins. Co.*, 275 Ga. 624 (571 SE2d 383) (2002); (2) compelling the depositions of the Wunderbar Companies' corporate representative (a) without proper service and (b) as a fishing expedition into the assets of non-judgment debtors; (3) denying the motion to dismiss in contravention of *C-Staff* and on the basis that service was waived; and (4) granting the motion for contempt and sanctions because

_____

[14] As set forth earlier, Fincher's letter does not specifically state for which companies he designated himself as the corporate representative, instead simply referring to companies in the plural.

10

the underlying discovery order was void, exceeded the scope of the underlying discovery order, and granted relief against non-parties who had not been joined.

1. In two enumerations of error (1 and 3), the Wunderbar Companies contend that the trial court erred by denying their motion to dismiss by (a) allowing the Appellees to implead them into post-judgment proceedings against the DPSG Companies in violation of *C-Staff*; and (b) finding they waived service. We agree.

(a) In *C-Staff*, the Supreme Court of Georgia addressed "whether OCGA § 9-11-69 authorizes a judgment creditor to implead and hold liable persons who were not parties to the underlying judgment." 275 Ga. at 624. The Court held "that it does not. In Georgia, a judgment[ ]creditor must initiate a separate civil action against persons it claims are liable for a judgment to which they were not parties by filing a complaint and serving the defendants under the procedures set forth in the Civil Practice Act." Id. Nonetheless, OCGA § 9-11-69, which governs post-judgment discovery, pertinently provides that "[i]n aid of the judgment or execution, the judgment creditor ... may do any or all of the following: (1) [e]xamine *any person* ... by taking depositions or propounding interrogatories; [and] (2) [c]ompel the production of documents or things[.]" (emphasis added). OCGA § 9-11-69 does not require the initiation of separate proceedings against the third parties from which post-judgment discovery is

sought. See id. And, in *C-Staff*, the plaintiff obtained post-judgment discovery from non-parties "[a]s part of its efforts to locate assets to satisfy the judgment" prior to any attempt to hold such non-parties liable for the underlying judgment. 275 Ga. at 624. The Supreme Court of Georgia condemned only the plaintiff's actions in attempting to assert *liability* against these non-parties absent a separate complaint, not the post-judgment discovery efforts themselves. See id. at 626(2).

A review of the record demonstrates that the Appellees' goal is to depose Fincher about all of his various companies in an effort to trace the DPSG Companies' assets and satisfy the judgment against them. Doing so through post-judgment discovery is proper. What the Appellees cannot do, however, is change the style of a case to add new parties without following the proper procedure, especially when the Wunderbar Companies appeared specially and objected to personal jurisdiction.

(b) The trial court's final order denying the motion to dismiss on the ground that the Wunderbar Companies waived service of an earlier filing is belied by the record. The order upon which the trial court based the finding of waiver arose out of the September 2024 hearing on a motion to compel discovery against the DPSG Companies. The motion to compel was served only on those entities. A finding by the trial court that it had personal jurisdiction over the DPSG Companies is not a finding

of personal jurisdiction over the Wunderbar Companies. There is no mention of service in the September 10, 2024 order, nor any discussion of the Wunderbar Companies. Pretermitting whether waiver of service as to one post-judgment filing can waive service as to a second post-judgment filing, there is no finding of service as to the motion to compel the Wunderbar Companies, nor is there evidence that would support such a finding. Thus, to the extent that the trial court's orders have attempted to add the Wunderbar Companies as parties to the case, the trial court erred, and the denial of the motion to dismiss is reversed.

2. The Wunderbar Companies' remaining enumerations of error (2 and 4) contend that the trial court erred by granting the Appellees' motion to compel the Rule 30(b)(6) depositions of the Wunderbar Companies' corporate representative and by granting the motion for contempt and for sanctions based on Fincher's failure to be deposed. Because there has been no proper service of any of the motions or discovery on the Wunderbar Companies, we agree and reverse.

Generally, a civil action does not conclude at judgment and includes post-judgment proceedings arising from the proceedings that produced the judgment. See *Workman v. RL BB ACQ I-GA CVL, LLC*, 303 Ga. 693, 696(1) (814 SE2d 696) (2018) ("[I]t would be peculiar that an 'action' would include proceedings to establish a right

13

but not subsequent efforts to enforce that right[.]”) (emphasis omitted).[15] Thus, post-judgment proceedings do not trigger the procedural protections of OCGA § 9-11-4 requiring the filing and service of a complaint to initiate a new civil action. See OCGA §§ 9-11-3(a) (“A civil action is commenced by filing a complaint with the court.”), 9-11-4 (describing the process required following the filing of a complaint). Instead, post-judgment proceedings are “pleading[s] subsequent to the original complaint[,]” OCGA § 9-11-5(a), and are governed by the general service requirements of OCGA § 9-11-5(b), which authorize statutory electronic service on counsel. See OCGA §§ 9-11-5(f)(4) (“When an attorney files a pleading in a case via an electronic filing service provider, such attorney shall be deemed to have consented to be served electronically with future pleadings for such case at the primary email address on record with the electronic filing service provider.”), 9-11-69 (“[T]aking depositions or propounding interrogatories ... [may be done] in the manner provided in this chapter for such discovery measures prior to judgment.”).

This is true for parties to the underlying litigation, but “for the trial court to

---

[15] Although OCGA § 15-6-77(e)(1) requires clerks to assign a new case number to “any postjudgment proceeding filed more than 30 days after judgment or dismissal in an action[,]” it states that such proceedings “shall be considered as a new case *for the purposes of this Code section*” (emphasis added), clarifying that this provision refers only to court costs and fees.

obtain personal jurisdiction over [a] nonparty, the nonparty *must* be served with some form of summons or the equivalent of it." *Ga. Pain & Wellness Ctr., LLC, v. Hatchett*, 368 Ga. App. 215, 219(1) (888 SE2d 650) (2023) (emphasis in original). See also the Uniform Interstate Depositions and Discovery Act, OCGA § 24-13-110 et seq. (setting forth the procedures required to subpoena and depose out-of-state witnesses).

The Wunderbar Companies were not parties to the underlying lawsuit, and as such were entitled to proper service for obtaining discovery against a non-party.[16] In denying the Wunderbar Companies' motion to dismiss, the trial court relied on an earlier finding that it had personal jurisdiction. But the transcript of the September, 2024 hearing is not in the record, and the trial court's written order, which supersedes any oral rulings that may have occurred, states that it has personal jurisdiction over the "Respondents/Judgment Debtors" identified in the style and confirmed by the Appellees as the Georgia entities against whom the judgment was obtained. Those are the DPSG Companies. The order makes no findings as to the Wunderbar Companies.

With respect to service of the motion to compel leading up to the trial court's

---

[16] The record reflects that the Wunderbar Companies are Virginia companies separate and distinct from the DPSG Companies. We make no finding as to whether Fincher intended to utilize the Wunderbar Companies to evade the judgment or has otherwise commingled the companies' assets, which issues may be explored in properly effectuated post-judgment discovery.

final order, there is no dispute that the Appellees' proof of service and the affidavits of service of the private process server show that it was served on only the DPSG Companies via their registered agent in Georgia. This is insufficient to establish proper service on a Virginia corporation.[17] As such, there was no basis for compelling the Wunderbar Companies to appear for a deposition or otherwise respond to discovery. Similarly, there is no basis to hold the Wunderbar Companies in contempt. Accordingly, the trial court's final order finding the Wunderbar Companies in contempt and compelling them to appear for a deposition and respond to discovery is reversed.

3. In light of our holdings, the Wunderbar Companies' assertion that the order granting the Appellees' motion to compel Rule 30(b)(6) depositions exceeded the bounds of post-judgment discovery is moot.

*Judgment affirmed in part and reversed in part. Davis, J., and Senior Judge C. Andrew Fuller concur.*

---

[17] Although the Appellees claim that the motion to compel was served on counsel for the Wunderbar Companies via statutory electronic service, there is no certificate of service for this pleading in the record.